UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDOULAYE DIALLO; WILLIAM MERRITT, | Case No.:  18-CV-1793 JLS (JLB) |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS REDWOOD INVESTMENTS, LLC, AND CHI KUANG HWANG'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| v. | |
| REDWOOD INVESTMENTS, LLC; SOCAL METRO HOLDINGS, LLC; CHRISTOPHER CARNES; TONIKA MILLER; CHI KUANG HWANG, | |
| Defendants. | (ECF No. 68) |

Presently before the Court is the Motion to Dismiss Second Amended Complaint filed by Defendants Redwood Investments, LLC ("Redwood"), and Chi Kuang Hwang (collectively, "Moving Defendants") ("Mot.," ECF No. 68).  Also before the Court are Plaintiffs Abdoulaye Diallo and William Merritt's (collectively, "Plaintiffs") Opposition to the Motion ("Opp'n," ECF No. 69) and Moving Defendants' Reply in support thereof ("Reply," ECF No. 70).  The Court vacated the hearing on the Motion and took it under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).  *See* ECF No. 74.  Having carefully reviewed the pleadings, the Parties' arguments and evidence, and the law, the Court **GRANTS** Moving Defendants' Motion **WITH LEAVE TO AMEND**.

/ / /

# BACKGROUND[1]

The Court has attempted to distill the complex and troubling facts of the Second Amended Complaint ("SAC," ECF No. 67), spanning 232 paragraphs over 30 pages, as concisely as possible.

## I.   The First Grant Deed

Mr. Merritt received a "notice of special tax lien," dated March 17, 2018, indicating that he was in default on his property taxes.  SAC ¶ 23.  On or about the evening of April 30, 2018,[2] after Mr. Merritt had been drinking heavily all day, *id.* ¶ 27, Defendant Tonika Miller, a real estate agent, *id.* ¶ 14, and Defendant Christopher Carnes, her husband, *id.* ¶ 13, showed up at Mr. Merritt's house, *id.* ¶ 24, situated at 4026 Charles Street, La Mesa, CA  91941 (the "Property").  *Id.* ¶¶ 9, 16.

Redwood is a California limited liability company located in Dana Point, California, which "deals in real estate transactions."  *Id.* ¶¶ 11, 218.  Redwood is managed by Mr. Hwang.  *See id.* ¶ 13.  Plaintiffs allege that Mr. Carnes and Ms. Miller were commissioned by Redwood and SoCal to obtain properties financed by Redwood and subsequently sold to SoCal.  *Id.* ¶ 26.  Plaintiffs allege that "each of the named Defendants was at all times mentioned herein, the agent, employee, partner and/or representative of one or more of the remaining Defendants and was acting within the course and scope of such relationship," and that "each of the Defendants herein gave consent to, ratified and authorized the acts alleged herein to each of the remaining Defendants."  *Id.* ¶ 15.  Plaintiffs also claim that "[a]ll of the defendants have contractual or other relationships with each other."  *Id.* ¶ 192.

/ / /

---

[1] The facts alleged in Plaintiffs' Second Amended Complaint ("SAC," ECF No. 67) are accepted as true for purposes of this Motion.  *See Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

[2] At one point the SAC states the date as "May 30, 2018," but the Court assumes this is a typographical error.  *See* SAC ¶ 151.

18-CV-1793 JLS (JLB)

Mr. Carnes and Ms. Miller, acting as agents of Redwood and SoCal, offered Mr. Merritt a case of beer. *Id.* ¶¶ 25, 28. They then took Mr. Merritt to a Claim Jumper Restaurant and Saloon in La Mesa, California, and offered to help him with the back taxes on his Property and his utilities if he signed a document (the "First Grant Deed"). *Id.* ¶¶ 30–33. Mr. Carnes and Ms. Miller did not inform Mr. Merritt that they intended to take the Property from him. *Id.* ¶ 39. Intoxicated, Mr. Merritt signed and notarized the First Grant Deed, purporting to transfer ownership of the Property to Mr. Carnes. *Id.* ¶¶ 34–37.

On May 2, 2018, Mr. Carnes recorded the First Grant Deed at the San Diego County Recorder's Office. *Id.* ¶¶ 38, 47–48. While at the Recorder's Office, Mr. Carnes and Ms. Miller e-mailed and/or texted a copy of the recorded First Grant Deed to Redwood, SoCal, and Mr. Hwang, "in order to inform their co-conspirators of their success in obtaining the grant deed from Mr. Merritt," *id.* ¶ 47, and sent another copy by mail to Mr. Carnes at an address in Missouri, *id.* ¶ 48. Plaintiffs allege that Mr. Carnes and Ms. Miller, "in association and conspiracy with all other Defendants, caused the fraudulent grant deed obtained from Mr. Merritt to be sent through the interstate United States mails by recording it at the San Diego recorder's office with instructions to have it mailed to" Mr. Carnes at an address in Missouri. *Id.* ¶ 95; *see also id.* ¶ 151.

On or around May 2, 2018, Redwood and Mr. Hwang paid the back taxes due on the Property in the amount of $36,137.81, approximately twice the back taxes of $18,137.81 actually due on the Property. *Id.* ¶¶ 57, 156–58.[3] Thus, when Plaintiffs went to pay the back taxes at the San Diego County Assessor's Office, they were turned away. *Id.* ¶ 57. Plaintiffs allege that Redwood "knowingly received stolen property from Defendant Carnes and Miller through a purchase and sale agreement to purchase the subject property." *Id.* ¶ 159. Plaintiffs further claim that Redwood "provided no contract to purchase the property from Mr. Merritt," *id.* ¶ 160; "provided no legally bargained for consideration for

---

[3] Plaintiffs allege Redwood overpaid the back taxes "in order to make it harder for [Mr. Merritt] to pay the funds back and regain control of the property." SAC ¶ 158.

the property of Mr. Merritt," *id.* ¶ 161; and paid the back taxes "[w]ithout a contractual interest or legitimate business purpose," *id.* ¶ 162.  Plaintiffs allege that "Defendant Hwang caused the RICO enterprise, Redwood Investments, LLC, to pay the property taxes on the subject property in order to fraudulently obtain, and thereafter fraudulently transfer, the subject property." *Id.* ¶ 163.

## II.   The Quitclaim Deed

Also on or around May 2, 2018, unaware of the First Grant Deed, Plaintiff Abdoulaye Diallo offered to purchase the Property from Mr. Merritt for $260,000.  *Id.* ¶ 54.  On or around May 4, 2018, Mr. Merritt and Mr. Diallo signed a contract for the sale of the Property, and Mr. Merritt also signed a quitclaim deed purportedly transferring the Property to Mr. Diallo.  *Id.* ¶ 55.  Mr. Merritt and Mr. Diallo recorded the quitclaim deed the same day, at which time they discovered the recorded First Grant Deed.  *Id.* ¶¶ 56, 58.

## III.   The Second Grant Deed

In New York, another grant deed (the "Second Grant Deed") was purportedly executed on or around June 6, 2018, and notarized on or around June 19, 2018, supposedly transferring the Property from Mr. Diallo to Mr. Carnes.  *Id.* ¶¶ 61–63, Ex. 4.

The Mr. Diallo who signed the Second Grant Deed is not the same Mr. Diallo who is a party to this action; rather, he lives in Brooklyn, New York.  *Id.* ¶¶ 64, 71.  The Mr. Diallo who is a party to this action "had no knowledge or involvement in preparing the [Second Grant Deed]," "did not sign it," "did not know about it," and "was not in the State of New York" at the relevant time.  *Id.* ¶ 71.

Plaintiffs allege that "Defendants defrauded Abdoulaye Diallo#2 into signing a fake grant deed for the sole purpose of creating a 'clean' chain of title in the San Diego County Records in favor of Christopher Carnes."  *Id.* ¶ 72; *see also id.* ¶ 185 (alleging all Defendants "acted together to defraud Abdoulaye Diallo#2").  "This enabled Christopher Carnes to transact title to Redwood Investments, LLC, through escrow which would not have been possible while the name 'Abdoulaye Diallo' remained on title."  *Id.*  In connection with the Second Grant Deed, Ms. Miller e-mailed the Mr. Diallo living in

Brooklyn several documents, including a "Relinquishment of Ownership in Error" that indicates, when recorded, it should be mailed to Redwood. *Id.* ¶¶ 75–77; *see also id.* Ex. 4. Thus, Plaintiffs allege that Redwood and Hwang "participated in the manufacture of the fake [Second Grant Deed]," *id.* ¶ 189, and that Redwood "is directly tied to the fraudulent signing and fraudulent filing of the [Second Grant Deed]," *id.* ¶ 78.

On or about June 28, 2018,[4] the Second Grant Deed was recorded in San Diego County. *Id.* ¶ 61. A copy of the recorded Second Grant Deed was mailed by the San Diego Recorder's Office, at Mr. Carnes and Ms. Miller's instruction,  to Mr. Carnes at an address in Missouri, *id.* ¶¶ 70, 98, and also was e-mailed by Mr. Carnes and Ms. Miller from their apartment in North Hollywood, California, to Redwood, SoCal, and Mr. Hwang. *Id.* ¶¶ 82, 101. Plaintiffs allege that, in so doing, "[a]ll other Defendants, acting in concert with Defendants Miller and Carnes, committed the acts of fraud, mail fraud, and wire fraud." *Id.* ¶ 102.

Plaintiffs claim that "[a]ll Defendants, and each of them, conspired together to fraudulently file false grants deeds in violation of California Penal Code § 115." *Id.* ¶ 84. They further claim that "Defendants, and each of them, in procuring both the fraudulent grant deeds . . . in favor of Defendant Carnes committed the criminal act of mail fraud." *Id.* ¶ 85. Finally, they claim that "Defendants, and each of them, in causing the fraudulent grant deeds . . . to be filed in favor of Defendant Carnes committed the criminal act of wire fraud." *Id.* ¶ 86. Plaintiffs broadly allege that "[a]ll Defendants acted in association and conspiracy by use of the telephone, mail, email or other communication facilities to communicate with each other regarding the conspiracy and to complete the unlawful execution of the grant deed and filing in the County Recorder's office," and that this constitutes racketeering activity. *Id.* ¶¶ 170–71.

/ / /

---

[4] Although the SAC says the Second Grant Deed was recorded on or around June 19, 2018, SAC ¶ 80, the Second Grant Deed indicates on its face that it was recorded on June 28, 2018, *see id.* Ex. 4. Accordingly, the Court assumes that "June 19" is a typographical error.

## IV. Other Predicate Acts

Beyond these predicate acts related to the Property, Plaintiffs allege that Ms. Miller and Mr. Carnes have been involved in multiple fraudulent and criminal real estate activities. *See id.* ¶¶ 103–25, Ex. 5. Plaintiffs attach to the SAC a Felony Complaint filed in San Mateo County, California, alleging that Ms. Miller and an individual who is not a party to the instant case engaged in the felonious recording of a forged instrument. *See generally id.* Ex. 5. Plaintiffs claim that one of the fraudulent transactions concerned a property located on Sunkist Drive in Oakland, California (the "Sunkist Property"), which belonged to a third party and not Plaintiffs. *Id.* ¶¶ 115–25.

Plaintiffs also allege that Redwood and Mr. Hwang, *see id.* ¶¶ 126–34, and SoCal, *see id.* ¶¶ 135–44, have been involved in various fraudulent and criminal real estate transactions. They claim that Redwood "participated in financing the fraudulent sale of" the Sunkist Property to a company named Pristine Holdings, LLC, on or about March 14, 2018. *Id.* ¶ 126. They also allege that Redwood and Mr. Hwang engaged in a fraudulent real estate transaction concerning another property owned by a third party, Allan Hallenbeck, in Laguna Hills, California (the "Hallenbeck Property"). *Id.* ¶¶ 127–34. Plaintiffs claim Redwood and Mr. Hwang swindled Mr. Hallenbeck out of $8,000 and also defrauded the bank involved in the sale via a "flopping" transaction. *Id.* ¶¶ 133–34. Plaintiffs do not appear to allege that Redwood or Mr. Hwang were involved in any of the allegedly fraudulent activities undertaken by SoCal. *See id.* ¶¶ 135–44.

Plaintiffs allege on information and belief that all Defendants "used the telephone, mail, email or other communication facilities to complete similar unlawful executions of grant deeds and filings in the County Recorder's office against many other individuals in real estate transactions." *Id.* ¶ 172. Because all the Defendants "each have been involved in multiple, serial, real estate fraud and swindle transactions," they "[e]ach have a high probability of continuing to engage in similar real estate fraud activity in the future." *Id.* ¶ 215.

/ / /

## V.      The RICO Enterprise

Plaintiffs mostly assert that the "RICO enterprise" is Redwood, including in their first cause of action for "civil RICO." *See, e.g.*, *id.* ¶¶ 149, 163, 169, 197, 199, 202, 206–08, 218.  However, at several points in the SAC, Plaintiffs assert that the enterprise is "Redwood Investments, LLC and or SoCal Metro Holdings, LLC."  *See id.* ¶¶ 192–93, 195.  And, at one point, Plaintiffs allege that "Defendant SoCal is also a RICO enterprise." *Id.* ¶ 201.  Plaintiffs allege that the enterprise has moved "Money, Funding, documents purporting to transfer real property, and other services . . . in interstate commerce."  *Id.* ¶ 218.

Plaintiffs claim that "[a]ll of the defendants agreed to participate in and assist the enterprise with full knowledge of its overall aim of operating a RICO enterprise in the guise of a real estate investment firm."  *Id.* ¶ 145; *see also id.* ¶ 195.  Plaintiffs assert that Mr. Hwang "makes all of the enterprise's important decisions," *id.* ¶ 196, including its "financial decisions," *id.* ¶ 197, and that he "mastermind[ed] and orchestrate[d] the fraudulent transaction that occurred as alleged herein," *id.* ¶ 210.  Plaintiffs also claim that Mr. Hwang "provides financing to the RICO enterprise in executing fraudulent real estate transactions."  *Id.* ¶ 198.  Plaintiffs allege that Mr. Hwang solicited SoCal to serve as a "straw-man third-party purchaser" of the Property and others.  *Id.* ¶ 200.

## VI.      Procedural History

On August 3, 2018, Mr. Merritt and Dasha Riley[5] filed the instant action in this Court alleging causes of action for (1) violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*; (2) civil conspiracy to commit wire fraud; (3) expungement of fraudulent grant deeds; and (4) constructive fraud.  *See generally* ECF No. 1.  On September 20, 2018, Plaintiffs filed a proof of service indicating that SoCal was served through its registered agent, Trish Rosano of Solutions, Inc., on

---

[5] Ms. Riley allegedly purchased Mr. Merritt's Property on July 23, 2018, *see* ECF No. 1 ¶ 18, after Mr. Diallo's purported purchase of the Property on May 4, 2018.  Consequently, she is no longer a party to this action, having been replaced in the Second Amended Complaint by Mr. Diallo.

August 24, 2018, *see generally* ECF No. 7, and requested entry of default as to SoCal.  *See generally* ECF No. 8.  The Clerk entered default as to SoCal on September 24, 2018.  *See* ECF No. 9.

On October 3, 2018, Plaintiffs filed their First Amended Complaint ("FAC"), adding a fifth cause of action for Elder Financial Abuse in violation of California Welfare and Institutions Code §§ 15600 *et seq.*  *See generally* ECF No. 13.  On October 17, 24, and 26, 2018, respectively, Mr. Carnes, Redwood and Mr. Hwang, and Ms. Miller filed Motions to Dismiss the FAC.  *See* ECF Nos. 27, 30, 32.  The Court vacated the hearing on the motions, *see* ECF No. 41, and, on August 6, 2019, issued an Order dismissing with prejudice Plaintiffs' second cause of action, dismissing without prejudice Plaintiffs' first cause of action, and declining to exercise supplemental jurisdiction over the remaining state law claims.  *See generally* ECF No. 54.  The Court further denied as moot the motion for default judgment as to SoCal.  *See id.*  The Court granted Plaintiffs thirty days in which to file an amended complaint.  *See id.* at 22.

On September 3, 2019, Plaintiffs filed an *ex parte* motion seeking additional time to file an amended complaint.  *See* ECF No. 56.  The Court extended the deadline for Plaintiffs to file an amended complaint to October 7, 2019.  *See* ECF No. 59.  Plaintiffs subsequently requested a second extension, *see* ECF No. 63, which was denied, *see* ECF No. 66.

Plaintiffs filed their Second Amended Complaint ("SAC") on October 7, 2019.  *See* ECF No. 67.  The SAC alleges two causes of action against all Defendants: (1) "Civil RICO" and (2) "RICO Conspiracy."[6]  *See generally id.*  Redwood and Mr. Hwang filed the instant Motion on October 21, 2019.  *See* ECF No. 68.  On December 6, 2019, Plaintiffs requested entry of default against Mr. Carnes, Ms. Miller, and SoCal; however, the Clerk did not enter default due to Plaintiffs' failure to provide proof of service to the defendants in question.  *See* ECF Nos. 71–73.

---

[6] The SAC alleges a third and final cause of action, "to cancel fraudulent grant deeds," against Mr. Carnes only.  *See* SAC ¶¶ 228–32.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."   Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).   A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief.  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal conclusions" contained in the complaint.  *Id.*  This review requires context-specific analysis involving the Court's "judicial experience and common sense."  *Id.* at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

1    pleader is entitled to relief.'"  *Id.*

2           "In reviewing a Rule 12(b)(6) motion to dismiss, a district court must accept as true

3    all facts alleged in the complaint, and draw all reasonable inferences in favor of the

4    plaintiff."  *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1020 (S.D. Cal. 2019)

5    (citing *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938,

6    945 (9th Cir. 2014)).  Moreover, "[a] document filed *pro se* is to be liberally construed,

7    and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards

8    than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

9    (internal quotation marks omitted) (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); Fed.

10   R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice")); *see also*

11   *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *Iqbal* did not alter the

12   "obligation" to construe pro se pleadings liberally).[7]

13          The Court will grant leave to amend unless it determines that no modified contention

14   "consistent with the challenged pleading . . . [will] cure the deficiency."  *DeSoto v. Yellow*

15   *Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v.*

16   *Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

### A.    First Cause of Action for "Civil RICO"

19          Plaintiffs allege civil RICO violations as to all Defendants predicated on alleged

20   federal wire and mail fraud offenses, as well as violation of California statutes prohibiting

21   the filing of false documents and burglary.  *See* SAC ¶¶ 203–22.

22          RICO permits civil suit by "any person injured in his businesses or property."  18

23   U.S.C. § 1964(c); *see also Compton v. Ide*, 732 F.2d 1429, 1433 (9th Cir. 1984).  To state

24   a claim under RICO, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a

25   pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the

---

[7] On August 27, 2020, Attorney James Cummins Diefenbach, III, appeared on behalf of Plaintiffs, *see* ECF No. 75, but at the time the SAC was filed and the present Motion was briefed, Plaintiffs were pro se.

plaintiff's 'business or property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996), *cert. dismissed*, 117 S. Ct. 759 (1997); *see also Sedima, S.P.R.L. v. Imrex Co. Inc.*, 473 U.S. 479, 496 (1985).

"'[R]acketeering activity' is any act indictable under several provisions of Title 18 of the United States Code, and includes the predicate acts of mail fraud[ and] wire fraud." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (citing 18 U.S.C. § 1961(1)).  A "pattern of racketeering activity . . . requires at least two [predicate] acts of racketeering activity . . . within ten years." 18 U.S.C. § 1961(5).  The Supreme Court has cautioned "that "while two acts are necessary, they may not be sufficient" to establish a pattern of racketeering activity. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–38 (1989); *see also id.* at 238 ("[P]roof of two acts of racketeering activity, without more, does not establish a pattern.") (quoting 116 Cong. Rec. 18940 (1970) (statement of Sen. McClellan)).  Consequently, "to prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued activity." *Id.* at 239 (emphasis in original).  Further, where a plaintiff alleges RICO claims against multiple defendants, the "plaintiff must allege at least two predicate acts by *each* defendant."  *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) (emphasis in original).

The heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure applies to RICO claims.  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988), *cert. denied*, 493 U.S. 858 (1989).  Under Rule 9(b), plaintiff must specifically allege the time, place, and manner of the alleged wrongful conduct, as well as identify the parties to each wrongful act.  *Moore*, 885 F.2d at 541; *Alan Neuman Productions, Inc.*, 862 F.2d at 1392–93.  RICO allegations that do not meet this requirement should be dismissed. *Moore*, 885 F.2d at 541; *Alan Neuman Productions*, 862 F.2d at 1392–93.  Where multiple defendants allegedly engaged in fraudulent activity, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together."

*Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  Rather, a plaintiff must identify *each* defendant's role in the alleged scheme.  *Id.* at 765.

Moving Defendants contend that Plaintiffs' RICO claim must be dismissed pursuant to Rule 12(b)(6).  *See* Mot. at 11–24.  Specifically, Moving Defendants argue that (1) Plaintiffs failed to plead the predicate acts of wire and mail fraud with the requisite specificity under Rule 9(b), *see id.* at 12–16; (2) Plaintiffs failed to allege a "pattern" of conduct, *see id.* at 16–21; (3) Redwood cannot be both a RICO enterprise and a defendant, *see id.* at 22; and (4) Mr. Diallo lacks standing to bring the claim, *see id.* at 22–24.

### 1.    *Redwood as Both RICO Enterprise and Defendant*

The Court will first address Moving Defendants' third major argument against Plaintiffs' civil RICO claim: that Redwood cannot be both a RICO enterprise and a defendant.  *See* Mot. at 22 (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 160 (2001)).  In their Opposition, Plaintiffs disagree with Moving Defendants' reading of *Cedric*, *see* Opp'n at 8–9, but in the alternative argue that "Plaintiffs have alleged multiple RICO enterprises," *id.* at 9.  Moving Defendants do not address Plaintiffs' alternative argument in their Reply.

The Court agrees with Moving Defendants that it is settled law that, in order to state a civil RICO claim, a complainant must allege both a "person" and an "enterprise" that are distinct, *i.e.*, the enterprise cannot simply be one of the named defendants.  *See, e.g.*, *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (citing *Cedric*, 533 U.S. at 164).  However, the Court also agrees with Plaintiffs that the allegations of the SAC are adequate to survive the present Motion.  The Ninth Circuit "ha[s] recognized that a group of individuals or corporations may together constitute a RICO enterprise even though they do not incorporate or otherwise form a legal entity."  *River City Markets, Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1461 (9th Cir. 1992) (citations omitted).  Moreover, the Ninth Circuit "consistently ha[s] held that in multiple-defendant RICO cases, some of the individual defendants may also be identified as members of the alleged association-in-fact enterprise."  *Id.* (citations omitted).  Thus, drawing all

inferences in Plaintiffs' favor and construing their pro se SAC liberally, as this Court must on a Rule 12(b)(6) motion, the Court believes Plaintiffs have pleaded an enterprise consisting of both Redwood and SoCal. *See, e.g.*, SAC ¶ 192 (alleging that "the association-in-fact enterprise [is] known as Redwood Investments, LLC and or SoCal Metrol Holdings, LLC"); *see also Cedric*, 533 U.S. at 160 ("Assuming, as we must given the posture of this case, that the allegations in the complaint are true, we conclude that the 'person' and 'enterprise' here are distinct and that the RICO provision applies."). Thus, the Court declines to dismiss Plaintiffs' first cause of action on this ground.

### 3.    *Mr. Diallo's Standing*

Second, the Court briefly addresses Moving Defendants' argument that Mr. Diallo lacks standing, and therefore any claims asserted by Mr. Diallo should be dismissed. *See* Mot. at 23–24. As Moving Defendants' own briefing acknowledges, it is not clear on the face of the pleadings which of the two plaintiffs has a legal interest in the Subject Property, and therefore any recovery, in this suit. *See id.* at 24 ("Either Merritt assigned this claim to Diallo and Diallo has standing OR Merritt didn't assign his claim and only Merritt has standing."). While it may be that ultimately only one of Plaintiffs will have standing to recover on the claims, Moving Defendants have failed to allege any prejudice they face at this early juncture by keeping both Plaintiffs in the case until the relevant facts concerning standing surface. Accordingly, the Court declines at this time to dismiss Mr. Diallo's claims for lack of standing.

### 2.    *Specificity Under Rule 9(b)*

Finally, the Court addresses Moving Defendants' first major argument against Plaintiffs' claim for civil RICO violations: that Plaintiffs' allegations fail to satisfy the heightened pleading standard of Rule 9(b). *See* Mot. at 12–16. Plaintiffs argue that their allegations are adequately specific, especially given that they allege that Mr. Carnes and Ms. Miller acted as Redwood and Mr. Hwang's agents. *See* Opp'n at 6 (citing SAC ¶¶ 25, 26, 224); *id.* at 7.

/ / /

Plaintiffs essentially allege Moving Defendants' involvement in four predicate acts, concerning the First Grant Deed, the Second Grant Deed, the Sunkist Property, and the Hallenbeck Property.  *See generally* SAC; *see also* Opp'n at 3.  Plaintiffs also assert that these four transactions constitute racketeering activity based on at least four statutes: 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), Cal. Penal Code § 115 (filing of false documents), and Cal. Penal Code § 460(b) (burglary).  *See* SAC ¶ 207.

i.   Wire Fraud and Mail Fraud

a.   The First and Second Grant Deeds

As to the First Grant Deed, Plaintiffs allege that, on May 2, 2018, the First Grant Deed "was sent electronically by wire via email and or text message by Defendant Carnes and Miller . . . to Defendant[s] Redwood . . . and . . . Hwang." FAC ¶ 47.  Plaintiffs claim "[t]his was done in order to inform their co-conspirators of their success in obtaining the grant deed from Mr. Merritt." *Id.*  Plaintiffs also allege that, while at the County Recorder's Office, "Defendants Carnes and Miller caused the [First Grant Deed] to be sent through the United States *interstate* mails . . . to: 6188 Dupree Street, Saint Louis, MO  63135." *Id.* ¶ 48 (emphasis in original).

As to the Second Grant Deed, Plaintiffs allege that, "[o]n or about June 28, 2018," Mr. Carnes and Ms. Miller "caused [the Second Grant Deed] to be transmitted in interstate commerce and then recorded in the San Diego Recorders office knowing that it was a false filing in violation of California Penal Code § 115." *Id.* ¶ 97.  On or around the same day, they "caused the [Second Grant Deed] to be illegally mailed in the United States Mails by requesting that the San Diego Recorders office mail it to" Mr. Carnes's attention at a Missouri address. *Id.* ¶ 98.  On information and belief, on or around the same day, Mr. Carnes and Ms. Miller also "caused the [Second Grant Deed] to be sent via wire and or email to all other Defendants" from their apartment in North Hollywood, California. *Id.* ¶ 101.

As relevant to both the First and Second Grant Deeds, Plaintiffs generally allege that "[a]ll Defendants acted in association and conspiracy by use of the telephone, mail, email,

14

or other communication facilities to communicate with each other regarding the conspiracy and to complete the unlawful execution of the grant deed and filing in the County Recorder's office." *Id.* ¶ 170.  Plaintiffs also claim that "each of the named Defendants was at all times mentioned herein, the agent, employee, partner and/or representative of one or more of the remaining Defendants and was acting within the course and scope of such relationship," and that "each of the Defendants herein gave consent to, ratified and authorized the acts alleged herein to each of the remaining Defendants." *Id.* ¶ 15.

Moving Defendants contend that Plaintiffs have failed to adequately allege Redwood and Mr. Hwang's specific involvement in the First and Second Grant Deed transactions. Mot. at 15–16.  They claim that "Plaintiffs fail to allege that Redwood or Hwang ever made any representations *to Plaintiffs*, much less the time, place, manner, and specific content of those unalleged representations."  Reply at 8.

However, Moving Defendants' argument misses the mark, as it appears, from the face of the SAC, that Plaintiff is seeking to hold Redwood and Hwang liable on the theory of *respondeat superior*—in other words, Redwood and Mr. Hwang are liable for the acts of Mr. Carnes and Ms. Miller as Moving Defendants' agents. *See, e.g.*, SAC ¶¶ 15, 25, 192.  This interpretation of the SAC is confirmed by Plaintiffs' argument in their Opposition that Mr. Carnes's and Ms. Millers's status as agents of Redwood and Mr. Hwang "ties the conduct of Carnes and Miller, as to all of their fraudulent conduct, to Defendants Redwood and Hwang."  Opp'n at 6.  Notably, Moving Defendants do not appear to address this argument in reply.

It is established Ninth Circuit law that "an employer that is benefited [sic] by its employee or agent's violations of section 1962(c) may be held liable under the doctrines of respondeat superior and agency *when the employer is distinct from the enterprise.*" *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 619–20 (9th Cir. 2004) (quoting *Brady v. Dairy Fresh Prods. Co.*, 974 F.2d 1149, 1154 (9th Cir. 1992)) (emphasis in original).

Nonetheless, while the Court finds that Plaintiffs could, potentially, state a claim premised on Moving Defendants' liability based on the acts of their purported agents, the

Court agrees with Moving Defendants' overarching argument that the allegations of the SAC are not adequate to do so.  These allegations "are 'nothing more than legal conclusions of the type prohibited by *Iqbal* and *Twombly*.'"  *Siegel v. Scripps Networks Interactive, Inc.*, No. CV1602166ABFFMX, 2016 WL 10968138, at *3 (C.D. Cal. May 18, 2016) (citation omitted); *see also United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't*, 911 F. Supp. 2d 1118, 1136 (E.D. Wash. 2012), *aff'd sub nom. United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834 (9th Cir. 2014) (finding "repeated allegations made by Plaintiffs that both named and unnamed individuals acted as 'BCTD Defendant's agents' . . . is merely a formulaic legal conclusion prohibited under *Iqbal* and *Twombly*," and that "Plaintiffs failed to plead facts showing that the putative agents committing these acts were subject to the control of 'BCTD Defendants.'") (citation omitted).

Plaintiffs only make generalized statements that Mr. Carnes and Ms. Miller are agents of Redwood and/or Mr. Hwang, without pleading necessary facts, such as Redwood and/or Mr. Hwang's right to control their purported agents' activities.  Without sufficient factual allegations concerning the purported agency relationship to tie Redwood and Mr. Hwang to the alleged mail and wire fraud connected to the First and Second Grant Deeds, Plaintiffs have failed to adequately allege these purported predicate acts.

### b.   The Sunkist and Hallenbeck Properties

Plaintiffs also allege two other predicate acts of wire and mail fraud as relevant to Redwood and Mr. Hwang.  First, Plaintiffs allege "[o]n information and belief" that Redwood participated in financing the fraudulent sale of the Sunkist Property on or around March 14, 2018.  SAC ¶ 126.  However, Plaintiffs fail to allege any act in relation to this particular predicate act that might constitute mail or wire fraud, much less the time, place, and manner of, and parties to, those communications.  The same is true of the allegations concerning the allegedly fraudulent sale of the Hallenbeck Property in 2016.  *See generally id.* ¶¶ 127–34.  Plaintiffs explicitly allege no acts that might be construed as wire or mail fraud, much less allege the facts concerning those acts with particularity.  The bare

16

allegation that all Defendants "used the telephone, mail, email or other communication facilities to complete similar unlawful executions of grant deeds and filings in the County Recorder's office against many other individuals in real estate transactions," *id.* ¶ 172, is inadequate under Rule 9(b).  Accordingly, Plaintiffs have failed to plead wire or mail fraud as to the Sunkist and Hallenbeck Properties with the requisite detail.

### ii.     Cal. Penal Code §§ 115 and 460(b)

Moving Defendants utterly overlook the other bases Plaintiffs assert for the alleged predicate acts: violations of California statutes prohibiting the filing of false documents (Cal. Penal Code § 115) and burglary (Cal. Penal Code § 460(b)).  *See* SAC ¶¶ 84, 207.  Nonetheless, the Court may "*sua sponte* 'note the inadequacy of a complaint and dismiss it for failure to state a claim'" where the Court finds that Plaintiffs "cannot possibly win relief" on the claim as stated.  *Sotanski v. HSBC Bank USA, Nat'l Ass'n*, No. 15-CV-01489-LHK, 2015 WL 4760506, at *6 (N.D. Cal. Aug. 12, 2015), *aff'd sub nom. Sotanski v. HSBC Bank USA, NA*, 671 F. App'x 999 (9th Cir. 2016) (quoting *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir.1988)).

The Court finds the allegations of the SAC insufficient to state predicates acts premised on these two statutory provisions.  As relevant here, Section 1961(1)(A) of Title 18 of the United States Code provides that the following may constitute racketeering activity:

> [A]ny act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year . . . .

However, the allegations of the SAC plainly fail to allege "racketeering activity" that falls within this definition.  The only offenses in the list that the Court can presume Plaintiffs intend to evoke, based on the allegations contained in the SAC, are robbery and extortion.  However, robbery under California law requires that the taking of the property be

"accomplished by means of force or fear." Cal. Penal Code § 211. There are no allegations in the SAC that Defendants used force or fear to induce Mr. Merritt to part with his property. The same is true of the alleged predicate acts involving the Sunkist Property and the Hallenbeck Property: there are certainly troubling allegations of duplicity, but not force or fear.

Similarly, extortion under California law is defined as "the obtaining of property or other consideration from another, with his or her consent, . . . induced by a wrongful use of force or fear, or under color of official right." Cal. Penal Code § 518. The obtaining of Mr. Merritt's signature on the deed "by any extortionate means," per California Penal Code § 522, would satisfy the "obtaining of property" requirement. *See, e.g.*, The Rutter Group, California Criminal Law § 8:79 ("Penal Code § 522 specifically identifies any instrument that would transfer property or create a right as one of the property rights protected by the Penal Code's prohibitions against extortion."). But again, Plaintiffs face the problem that there are no allegations that Defendants used "extortionate means," *i.e.*, "force or fear," to obtain Mr. Merritt's signature. Such allegations are similarly missing as to the signatures of the owners of the Sunkist Property and the Hallenbeck Property.

Accordingly, the Court also finds that Plaintiffs fail to satisfactorily allege predicate acts by Moving Defendants premised on various California state law provisions. Because the Court finds that Plaintiffs have not adequately alleged any predicate acts, the Court declines to address Moving Defendants' second argument for dismissal of Plaintiffs' first cause of action: that Plaintiffs fail to plead a "pattern" of violative conduct. *See* Mot. at 16–21; *see also Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1477 (C.D. Cal. 1991) ("Without these predicate acts of racketeering activity, plaintiff can state no claim under RICO," and, accordingly, "it is unnecessary for the Court to consider the other deficiencies in [the plaintiff's] pleading of its RICO claims.").

Thus, the Court finds that Plaintiffs have failed to state a claim for "Civil RICO" and accordingly **GRANTS** Moving Defendants' Motion with regard to Plaintiffs' first cause of action. Although the Court remains skeptical that Plaintiffs will be able to adequately

allege this cause of action, the Court also is not convinced that the defects identified are intrinsically incurable. *C.f.* Mot. at 27–28. Accordingly, the Court **DISMISSES** Plaintiffs' first cause of action **WITHOUT PREJUDICE**.

### B.    Second Cause of Action for "RICO Conspiracy"

Plaintiffs additionally allege a conspiracy to violate RICO as to all Defendants. *See* SAC ¶¶ 223–27. Under Section 1962(d) of Title 18 of the United States Code, "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." "To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. America Online Inc.,* 208 F.3d 741, 751 (9th Cir. 2000). "A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Salinas v. United States,* 522 U.S. 52, 65 (1997). Moreover, "[a] defendant must also have been 'aware of the essential nature and scope of the enterprise and intended to participate in it.'" *Howard,* 208 F.3d at 751 (quoting *Baumer v. Pachl,* 8 F.3d 1341, 1346 (9th Cir.1993)).

Moving Defendants raise three chief arguments for dismissal of Plaintiffs' second cause of action pursuant to Rule 12(b)(6): (1) the new cause of action exceeds the scope of amendment granted by this Court's August 6, 2019 Order, *see* Mot. at 24–25; (2) because Plaintiffs' claim for civil RICO violations is deficient, the RICO conspiracy claim must likewise fail, *see id.* at 25–26; and (3) the allegations of RICO conspiracy are deficient, *see id.* at 26–27.

Regarding Moving Defendants' first argument, the Court notes that the proper vehicle for raising this argument would have been a motion to strike pursuant to Federal Rule of Civil Procedure 12(f); however, the Court will address the substance of the argument as though it were a properly designated motion to strike. *See, e.g.*, *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1146 (E.D. Cal. 2010) (converting improperly

designated motion to strike to 12(b)(6) motion); *Mijares v. Ryder Truck Rental, Inc.*, No. CV 20-1328-MWF (KS), 2020 WL 1912217, at *4 (C.D. Cal. Apr. 17, 2020) (construing motion to dismiss as motion to strike).  While the Court agrees that the new cause of action for RICO conspiracy exceeds the scope of amendment granted in the August 6, 2019 Order, "[e]xceeding the scope of a court's leave to amend is not necessarily sufficient grounds for striking a pleading or portions thereof."  *Allen v. Cnty. of Los Angeles*, No. CV 07-102-R (SH), 2009 WL 666449, at *2 (C.D. Cal. Mar. 12, 2009) (citations and internal quotation marks omitted).  Ultimately, Moving Defendants do not argue that they have been prejudiced by the addition of this new claim, which relies on the same facts as the previously asserted claim for civil RICO violations.  *See id.* at *3.  And, as Plaintiffs note, they were pro se at the time the SAC was filed, and should therefore be accorded some latitude.  *See* Opp'n at 9.  Accordingly, the Court will neither dismiss nor strike Plaintiffs' second cause of action against Moving Defendants on this ground.

As to Moving Defendants' second argument, the Court agrees that the deficiency of Plaintiffs' first cause of action merits dismissal of their second cause of action.  In *Howard, supra*, the Ninth Circuit affirmed the district court's holding that the plaintiffs failed to state a claim for a conspiracy to violate RICO, as "[p]laintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO."  208 F.3d at 751; *see also Ewing v. Flora*, No. 14CV2925 AJB (NLS), 2015 WL 12564225, at *5 (S.D. Cal. Mar. 25, 2015) ("The failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy.") (citing *Howard*, 208 F.3d at 751); *Ewing v. 8 Figure Dream Lifestyle, LLC*, No. 18-CV-1063-AJB-AGS, 2019 WL 1429589, at *7 (S.D. Cal. Mar. 29, 2019) ("Plaintiff has failed to adequately plead a RICO violation, accordingly Plaintiff's cause of action for RICO conspiracy also fails.").

Because the Court has determined that Plaintiffs failed to state a claim for violation of RICO, *see supra* at 10–19, the Court finds Plaintiffs likewise have failed to allege a

/ / /

/ / /

claim for conspiracy to violate RICO.[8]   Accordingly, the Court **GRANTS** Moving Defendants' Motion as to this cause of action as well.   Again, the Court **DISMISSES** this cause of action, which Plaintiffs have only attempted to state once, **WITHOUT PREJUDICE**.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Moving Defendants' Motion. Specifically, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' first and second causes of action as to Moving Defendants.

The Court will grant Plaintiffs one final opportunity to amend.   Plaintiffs **MAY FILE** an amended complaint within <u>thirty (30) days</u> of the electronic docketing of this Order.  Should Plaintiffs elect to file an amended complaint, it must cure the deficiencies noted herein and must be complete in itself, without reference to Plaintiffs' prior complaints.   *See* S.D. Cal. CivLR 15.1.   Any claims not re-alleged in the amended complaint will be considered waived.   *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925, 928 (9th Cir. 2012).   To be clear, Plaintiffs are *only* granted leave to amend the causes of action currently asserted in their SAC.  ***Should Plaintiffs fail to file an amended complaint within thirty (30) days of the electronic docketing of this Order, this action will proceed against the remaining Defendants, but Plaintiffs' claims against Redwood and Mr. Hwang will be dismissed*** <u>***with prejudice***</u>***.***

**IT IS SO ORDERED.**

Dated:  October 14, 2020

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

---

[8] In light of this disposition, the Court declines to address Moving Defendants' third argument regarding the sufficiency of Plaintiffs' conspiracy allegations.

18-CV-1793 JLS (JLB)